IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ROBERT W. AYERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:15CV934 |
| | ) |
| NANCY BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Robert W. Ayers, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g)), to obtain review of a final decision of the Commissioner of Social Security[1] denying his claims for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a POD and DIB in May of 2012 alleging a disability onset date of February 1, 2011. (Tr. 14, 231-232.)[2] The application was denied initially and

---

[1] Nancy Berryhill recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 7.)

again upon reconsideration. (*Id.* at 120-28, 130-37.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 138) and at the May 1, 2014 hearing were Plaintiff, his attorney, and a vocational expert ("VE"). (*Id.* at 42-75.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 11-19.) On October 1, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of review. (*Id.* at 1-4.)

## II. FACTUAL BACKGROUND

Plaintiff was 47 years old on the alleged disability onset date. (*Id.* at 17.) He had a limited education and was able to communicate in English. (*Id.*)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

2

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).

3

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(a). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

---

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

4

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[5] ("RFC") and his vocational abilities. If so, the claimant is not disabled.

20 C.F.R. § 404.1520.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 1, 2011. (Tr. 13.) The ALJ next found in step two that Plaintiff had the following severe impairments: chronic left knee pain status-post total left knee replacement, obesity, and learning disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*) At step four, the ALJ determined that Plaintiff could not return to his past relevant work. (*Id.* at 17.) At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy that he could perform. (*Id.* at 18.)

### B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on his evaluation of the evidence. (*Id.* at 15-17.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform light work except that he:

> must have the option to sit/stand in 1-hour increments

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

throughout the day without going off task; is limited to occasional use of his left lower extremity for foot controls; can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds; can never kneel or crawl; can occasionally crouch and balance; can never stoop with left lower extremity; must avoid concentrated exposure to moving machinery and unprotected heights; Mentally, the claimant is limited to jobs that do not require reading instructions or reports or fixed production rate or pace.

(*Id.* at 15.)

## C. Past Relevant Work

The ALJ found in step four that Plaintiff had past relevant work as an ironworker. (*Id.* at 17.) The ALJ found that Plaintiff was unable to perform his past relevant work. (*Id.*)

## D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). If the claimant has established at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with his RFC, age, education, and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). The ALJ found here that given Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy that he could perform, such as a clerk, ticket taker, and small parts assembler. (Tr. 18.)

## V. ANALYSIS

In pertinent part, Plaintiff contends that the ALJ failed to properly account in the RFC for his moderate limitations in concentration, persistence, or pace ("CPP"). (Docket Entry

6

13 at 12-15.) For the following reasons, the Court agrees.

On March 18, 2015, the United States Court of Appeals for the Fourth Circuit published its opinion in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In *Mascio*, the Fourth Circuit determined that remand was appropriate for three distinct reasons, one of which is relevant to the analysis of this case. Specifically, the Fourth Circuit remanded in *Mascio* because the hypothetical the ALJ posed to the VE, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining CPP. *Mascio*, 780 F.3d at 637-38.

The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*[6]

---

[6] Pre-*Mascio*, an ALJ's finding that a claimant had a moderate limitation, as opposed to a mild or no limitation, was generally insignificant. *See Handy v. Comm'r, Soc. Sec. Admin.*, No. SAG-09-166, 2015 WL 9302972, at *3 n.4 (D. Md. Dec. 22, 2015) (unpublished). The finding that potentially

7

Here, the ALJ determined at step three that the claimant had moderate limitations in CPP. (Tr. 14.) In support, the ALJ's assessment, in its entirety, was, "He testified that he has difficulty concentrating. He indicated that he cannot pay attention for prolonged periods of time. (Exhibit B5E). He can handle stress but has difficulty in handling changes in routine." (*Id.* at 14.) "Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *See Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH–14–2214, 2015 WL 2395108, at *3 (D.Md. May 19, 2015) (unpublished). Here, the ALJ did neither.

Specifically, the ALJ did not include a limitation in the RFC assessment that accounts for Plaintiff's moderate limitations in CPP. Instead, the ALJ concluded that Plaintiff had the mental RFC to perform "jobs that do not require reading instructions or reports or fixed production rate or pace." (Tr. 15.) Despite the Commissioner's arguments to the contrary (Docket Entry 15 at 11-13), this is insufficient to account for Plaintiff limitations in CPP.

More specifically, at most, this mental RFC finding accommodates only Plaintiff's moderate limitations in pace, but not his moderate limitations in concentration or persistence, because it includes a restriction to a "fixed production rate or *pace*." (Tr. 15 (emphasis

---

triggered a listing was that of a "marked" limitation. *Id.* Thus, the omission of a meaningful explanation to justify a "moderate" finding would likely have been, at most, harmless error. *Id.* Now, post-*Mascio*, a reviewing court must understand the rationale behind a finding of moderate limitation to assess the validity of the presence or absence of corresponding limitations in an RFC. *Id.* An ALJ finding a moderate limitation, therefore, has to ensure that the precise nature of that limitation is addressed in sufficient detail. *Id.* Here, as explained below, the analysis in this case does not meet that standard.

8

added).) *See, e.g., Cole v. Colvin*, No. 5:16-CV-34-BO, 2017 WL 325936, at *2 (E.D.N.C. Jan. 23, 2017) (unpublished) ("However, the RFC formulated by the ALJ [including quotas], while it does address plaintiff's limitations in regard to pace, does not account for plaintiff's difficulties with persistence or concentration.").

Beyond that, the only other restriction in the ALJ's mental RFC finding is for jobs that do not "require reading instructions or reports." (Tr. 15.) However, the reading restriction is unrelated to Plaintiff's moderate restrictions in CPP, and instead apparently relates to the limitations stemming from Plaintiff's learning disability and/or education. The ALJ found Plaintiff's learning disability to be a severe impairment, which—according to Plaintiff's testimony—resulted in a "very limited ability to read and write." (Tr. 13, 46.)[7] The undersigned thus concludes that the ALJ's mental RFC finding insufficiently addressed Plaintiff's moderate limitations in CPP. Therefore, unless the ALJ's decision explains elsewhere why additional mental restrictions are unnecessary, her decision is unreviewable and a remand for further proceedings is in order.

---

[7] *See, e.g., Proctor v. Colvin*, No. 2:15-CV-16255, 2017 WL 191174, at *4 (S.D.W. Va. Jan. 17, 2017) (unpublished) ("ALJ did not explain his reasons for including a condition that Claimant cannot read or write anything above a sixth grade reading level and, in any event, this condition has no direct bearing on Claimant's ability to stay on task[.]"); *Tyler v. Colvin*, No. 1:15CV225, 2016 WL 831944, at *3 (M.D.N.C. Feb. 29, 2016) (unpublished) ("The additional limitations in Plaintiff's RFC limiting him to work that does not involve reading or writing fails to account for his moderate limitations in concentration, persistence, or pace."), *recommendation adopted* Slip Op. (M.D.N.C. March 23, 2016); *Spigner v. Colvin*, No. CV 9:15-2828-TMC-BM, 2016 WL 3892453, at *7 (D.S.C. July 5, 2016) (unpublished) ("Although the ALJ did assign a limitation as to reading, such a limitation does not appear to take into account any inability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.") (citation omitted), *report and recommendation adopted*, No. CV 9:15-2828-TMC, 2016 WL 3878257 (D.S.C. July 18, 2016) (unpublished).

9

The ALJ provides no such explanation. The only assessment of Plaintiff's mental status contained in the ALJ's decision addresses his learning disability. It states:

> Regarding his alleged learning disorder, the claimant presented to Dr. Stephen McCullough in August 2005 for psychological evaluation. (Exhibit B8F). As mentioned above, he obtained a Full Scale IQ of 82, which is in the Low Average range of intellectual functioning. On examination, there was no obvious evidence of difficulties with reality testing or gross cognitive impairment. The claimant demonstrated a relative weakness in subtests that measured his ability to store, manipulate, and retrieve information from short-term or immediate memory. Dr. McCullough diagnosed the claimant with mathematics disorder.

(Tr. 16.)

Nothing in this assessment explains why the ALJ's mental RFC assessment is sufficient to account for Plaintiff's moderate limitations in CPP. On the one hand, it observes that Plaintiff demonstrated no "gross cognitive impairment," while on the other hand, it further identifies a "weakness" as to short term memory. (*Id.*) The ALJ's analysis is inadequate. It leaves the undersigned to speculate as to whether the ALJ inadvertently neglected to account for Plaintiff's limitations in CPP or whether the ALJ somehow believed she had—tacitly and without any explanation—accounted for these limitations in her RFC finding.

Finally, the Court notes that the ALJ here appeared to credit Plaintiff's assertion that he "has difficulty in handling changes in routine" because she cited it in support of her step three finding that Plaintiff suffered from moderate limitations in CPP. (Tr. 14.) It therefore appears that the ALJ considered Plaintiff's reported difficulty in handling changes in routine as part of his moderate limitations in CPP. There is, however, no restriction in the RFC

10

accommodating Plaintiff's reported limitation in this area, nor is there an explanation in the decision addressing why no such restriction in the RFC is necessary.

All this prevents the Court from engaging in meaningful judicial review. As a result, the Court concludes that remand is proper so that the ALJ may build a logical bridge between the evidence of record and her conclusions. *Mascio*, 780 F.3d at 638 ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity . . .[b]ut because the ALJ here gave no explanation, a remand is in order.").

None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that matter. Nevertheless, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings. The Court declines consideration of the additional issues raised by Plaintiff at this time. *Hancock v. Barnhart*, 206 F.Supp.2d 757, 763-764 (W.D. Va. 2002) (on remand, the prior decision of no preclusive effect, as it is vacated and the new hearing is conducted).

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the decision of the ALJ is not susceptible to judicial review. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's motion for judgment (Docket Entry 12)

should be **GRANTED** and Defendant's motion for judgment on the pleadings (Docket Entry 14) be **DENIED**.

*/s/ Joe L. Webster*
Joe L. Webster
United States Magistrate Judge

January 27, 2017
Durham, North Carolina